# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. LINDA PINKINS

### Direct Appeal from the Criminal Court for Shelby County
### No. 09-02193    John T. Fowlkes, Judge

---

### No. W2009-02037-CCA-R3-CD - Filed June 11, 2010

---

The defendant, Linda Pinkins, pled guilty to vehicular homicide, a Class C felony, on July 22, 2009.  The trial court sentenced her to three years in the workhouse and ordered that she serve six months in confinement and five years on probation.  On appeal, the defendant argues that the trial court erred by denying judicial diversion and by sentencing her to a term of confinement.  Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Kim G. Sims, Memphis, Tennessee, for the appellant, Linda Pinkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; William L. Gibbons, District Attorney General; and Garland Erguden, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

This case stems from the September 14, 2008, vehicular accident that resulted in the death of a seven-year-old child.  Initially, we note that the transcript of the guilty plea hearing is not in the record before this court.  However, the police report reveals that the defendant was driving northbound on Josephine Street in Memphis, Tennessee, when she side-swiped one vehicle and rear-ended a second vehicle.  The homicide victim was a passenger in the second vehicle.  Paramedics transported the victim from the scene in critical condition, and

he passed away the following day. Crash data from the defendant's car revealed that she was traveling seventy-six miles per hour at the time of the accident. The posted speed limit was thirty-five miles per hour. The defendant gave a statement to police, saying that she could not remember anything from the time she left the grocery store to after the accident. She further stated that she was on medication for diabetes and seizures and that she had been in an accident in 2006 "where [she thought] the same thing happen[ed]." In March 2009, a Shelby County grand jury indicted the defendant, Linda Pinkins, for vehicular homicide, a Class C felony. She pled guilty as charged on July 22, 2009. The trial court held a sentencing hearing on August 11, 2009, at which the defendant and the victim's great-aunt testified.

The defendant testified that she was a secretary for Memphis City Schools. She also had a position at the airport, but because she was unable to drive for six months after the accident by operation of law, the airport placed her on medical leave. In 1999, doctors diagnosed her as a diabetic, and in the same year she began having seizures, for which she took medication. On the day of the accident, she had taken the prescribed dosage of medication. She admitted that she blacked out while driving. The defendant said the last thing she remembered before the accident was leaving a grocery store. When she learned that a child died as a result of the accident, she became depressed and sought help from her church. She said, "I'm very sorry that this happened and I wished [sic] it didn't and I ask forgiveness from the family."

On cross-examination, the defendant admitted that after the accident, she drove occasionally. In 2000, she had an accident where there was a personal injury, but she could not remember if a seizure or blackout caused the accident. The defendant did not remember her doctor telling her, on August 10, 2006, that she should not drive. She had not seen her doctor for approximately two years before the accident, but she continued taking medication. Her doctor released her to "return to full duty," which she considered to mean that she could drive because her position at the airport required driving. The defendant said she did not consider herself to be a "menace on the streets" because of her seizures. She stated that she had valid car insurance at the time of the accident.

On re-direct examination, the defendant said she thought she did not need to see her doctor if her seizures were under control. Since the accident, she had been to her doctor two or three times.

In response to questions by the court, the defendant said that she has "partial seizure[s]" that cause her to black out for three to four minutes. She further stated that there is no warning prior to the onset of the seizures. She had two to three seizures a year, and she never thought about ceasing to drive "because that's the only way [she could] get to work and

-2-

anywhere [she needed] to go." Additionally, she did not believe anyone told her to stop driving. The defendant said her last car accident was in 2003. She denied that she told police that her last accident was in 2006 but said she was not sure whether that was true. She could not remember whether a seizure caused the 2003 accident. When asked how many accidents she had that resulted from blackouts, she said, "I guess two."

Barbara Wakefield, the great-aunt of the victim, testified that the victim was seven years old when he died. His mother was driving the car, and his two older brothers were also in the car. All three were injured in the accident. The thirteen-year-old boy "bruised his back and messed up his leg." The eleven-year-old boy was in intensive care for an extended time but has since recovered. The accident injured the mother's back and leg, and she continued to take pain medication for her injuries.

Following the hearing, the trial court denied the defendant's requests for judicial diversion and full probation. The court sentenced her to three years in the workhouse and ordered that she serve six months in confinement and five years on probation.

**Analysis**

On appeal, the defendant assigns error to the trial court's denial of judicial diversion and imposition of a six-month term of confinement. The state responds that this court should deem the defendant's sentencing issues waived for lack of an adequate record due to the absence of a guilty plea hearing transcript. Alternatively, the state argues that the trial court properly denied judicial diversion and full probation.

The record before this court does not contain a transcript of the guilty plea. In order to conduct an effective appellate review of sentencing, a transcript of the guilty plea hearing is necessary. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999). The transcript of the guilty plea is usually necessary in order for this court to ascertain the facts and circumstances surrounding the offense. Indeed, the guilty plea hearing is the equivalent of a trial. *Id*. at 843. In the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct. *Id*. at 844. However, the record in this matter is sufficient to determine the issues presented by the defendant.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption that the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness

is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999).

*Judicial Diversion*

Judicial diversion is a "legislative largess" where a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Judicial diversion is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion rests with the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). When a defendant challenges the trial court's denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As this court said in *Anderson*:

> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under T.C.A. § 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. Only an abuse of that discretion will allow us to overturn the trial court

857 S.W.2d at 572 (citation omitted).

The criteria that must be considered in determining whether an eligible accused should be granted judicial diversion include: (a) the defendant's amenability to correction; (b) the circumstances of the offense; (c) the defendant's criminal record; (d) the defendant's social history; (e) the defendant's physical and mental health; and (f) the deterrence value to the defendant and others. *Cutshaw*, 967 S.W.2d at 343-44; *Parker*, 932 S.W.2d at 958. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. *Cutshaw*, 967 S.W.2d at 344; *Parker*, 932 S.W.2d at 958.

-4-

In this case, the trial court found that the defendant was amenable to correction, had a good social history, and did not have a criminal record. However, the court also found that the circumstances of the offense were egregious because the defendant knew that she occasionally blacked out and had blacked out while driving in the past. Also, four people were injured as a result of the accident, one of whom died. The court further found that denial of judicial diversion would serve as a deterrent for both the defendant and those similarly situated and that judicial diversion would not serve the best interest of the defendant and the public. The defendant's testimony provides substantial evidence in support of the denial of judicial diversion. She admitted that she resumed driving when her doctor released her to "full duty" and that she had previously had two accidents caused by blackouts. We conclude that the trial court sentenced the defendant according to the statute and that the record contains substantial evidence to support the denial of judicial diversion. Therefore, the defendant is not entitled to relief on this issue.

*Probation*

A defendant is eligible for probation if the sentence received by the defendant is ten years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of ten years is eligible for probation if the individual sentences imposed for the convictions fall within the probation eligibility requirements. *State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986).

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to ten years or less and for whom incarceration is not a priority is subject to alternative sentencing. *State v. Byrd*, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. *Id.* at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Commission Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing that the sentence imposed is improper and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history

and present condition, the need for deterrence, and the best interest of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995). The defendant's lack of credibility is also an appropriate consideration and reflects on a defendant's potential for rehabilitation. *State v. Nunley*, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999).

Probation may be denied based solely upon the circumstances surrounding the offense. *State v. Ring*, 56 S.W.3d 577, 586 (Tenn. Crim. App. 2001); *State v. Hartley*, 818 S.W.2d 370, 374 (Tenn. Crim. App. 1991). However, the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree; and the nature of the offense must outweigh all factors favoring probation. *Hartley*, 818 S.W.2d at 374-75.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); *State v. Batey*, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986).

Guidance as to whether the trial court should grant alternative sentencing is found in Tennessee Code Annotated section 40-35-103. Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103.

As a standard offender convicted of a Class C felony, the defendant is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary.

Because the defendant is seeking full probation, she bears the burden of showing that the sentence imposed was improper. In this case, the trial court placed great emphasis on providing an effective deterrence, which supports the court's imposition of a period of confinement. Additionally, the court's finding that the circumstances of the accident were egregious further supports its imposition of confinement. In our view, the defendant has not shown that six months of incarceration was an improper sentence nor has she shown that full probation is in her best interest or the best interest of the public. The trial court determined that split confinement was appropriate, and this court is without reason to disturb that decision.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE